United States District Court
Southern District of Texas
**ENTERED**
March 03, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal Action No. 7:23-CR-00935-2** |
| | § | |
| **CUTBERTO MARTINEZ GONZALEZ** | § | |

**MEMORANDUM OPINION AND ORDER**

Sometimes, a case turns not on what happened at the scene of a crime, but on what was said in a quiet room afterward. For Defendant Cutberto Martinez Gonzalez, that room was a federal interview, and the words were an admission that he knew about 76 firearms hidden in a co-defendant's trailer as they tried to cross into Mexico. Nearly five years after the seizure, the Government intends to use those words against him. But Gonzalez insists that they never should have been spoken, let alone heard by a jury.

Pending before the Court is Defendant's Motion to Exclude Proffer Evidence. (Dkt. No. 103). After reviewing the relevant pleadings and evidence, the Court **GRANTS in part** and **DENIES in part** Gonzalez's Motion. The Court **DENIES** his requests to suppress the proffer statement based on alleged ineffective assistance of prior counsel and to invalidate the proffer agreement for lack of consideration, but **GRANTS** his request to exclude the proffer statement under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410(a)(4).

## I. BACKGROUND

On December 15, 2020, Defendant Cutberto Martinez Gonzalez was with a distant relative (and current co-defendant) going to visit their respective extended families in

Mexico, where Gonzalez has a second house. (Dkt. No. 103-1 at 1–2). While attempting to cross the border into Mexico, the two were stopped and arrested after dozens of firearms were discovered hidden in the co-defendant's trailer attached to Gonzalez's vehicle. (*Id.* at 3–5); (Dkt. No. 103-1 at 2); (Dkt. Nos. 1, 11).

On June 27, 2023, a federal grand jury indicted Gonzalez for attempting to smuggle 76 firearms from the United States to Mexico without a license or written approval, in violation of 18 U.S.C. §§ 554(a) and 2. (Dkt. Nos. 1, 11). That same day, a bench and arrest warrant issued, (Dkt. Nos. 5, 7), and Gonzalez was arrested shortly after, on July 13, 2023, (Dkt. No. 10).

Attorney Reynaldo Merino initially appeared on Gonzalez's behalf and represented him at his arraignment on July 20, 2023. (Dkt. Nos. 14, 16). That same day, Merino informed the Government that Gonzalez wished to speak with investigators to provide information that might be useful in the investigation and prosecution of others. (Dkt. No. 103-2 at 1); (Dkt. No. 108 at 2). The Government offered Gonzalez a proffer agreement (the "Proffer Agreement" or "Agreement"), defining the terms of Gonzalez's July 20th statements to the Government. (Dkt. No. 108 at 2). The pertinent portions include the following excerpts from paragraphs five through seven[1]:

Paragraph 5: **Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410:**

> The U.S. Attorney's Office and [Gonzalez] understand that any statements made by [Gonzalez] pursuant to this proffer agreement are not subject to Fed. R. Crim. P. 11(f) (regarding the admissibility or inadmissibility of a plea, plea discussions and related statements) and Fed. R. Evid. 410 (regarding

[1] The signed Proffer Agreement can be found at in its entirety (Dkt. No. 103-2 at 1–4).

prohibited uses of pleas, plea discussions and related statements and exceptions), and [Gonzalez] shall not assert any claim under these provisions that such statement, or leads therefrom, should be suppressed. The admissibility of any statements [Gonzalez] makes pursuant to this proffer agreement in any subsequent proceeding is subject only to the terms of this agreement.

Paragraph 6: **Permissible and prohibited uses of proffered statements and information:**

**a. Prohibited uses:**

Except as otherwise permitted in this proffer agreement, the U.S. Attorney's Office agrees that statements made by [Gonzalez] during proffer debriefings will not be offered against [him] in the government's case-in-chief in this case or in any prosecution brought by the U.S. Attorney's Office, except as detailed in paragraph c below.

**b. Derivative Use:**

The government may . . . pursue investigative leads derived from[] any statements or information provided by [Gonzalez] that may lead to other evidence . . . which may be used by the U.S. Attorney's Office at any stage of a criminal prosecution, civil case, or administrative proceeding. It is further understood that this provision eliminates the necessity for a *Kastigar* hearing at which the U.S. Attorney's Office would otherwise have to prove that the evidence it would introduce at trial or any related legal proceeding is not tainted by any statements made by, or other information provided by, [Gonzalez] during the proffer. *See Kastigar v. United States*, 406 U.S. 441 (1972).

**c. Prosecution for false statements, obstruction of justice, or perjury:**

If [the U.S. Attorney's Office] determines that [Gonzalez] has knowingly made false statements or misrepresentations, has knowingly withheld information from the government, or has otherwise knowingly misled this office and investigators during the proffer debriefings or during testimony, those statements, misrepresentations, or omissions may be used in

a prosecution for false statements, obstruction of justice, perjury, and/or similar offenses.

**d. Impeachment and rebuttal:**

[T]he U.S. Attorney's Office may use any statements or information provided by [Gonzalez] pursuant to this agreement to impeach or rebut [his] testimony, directly or in cross-examination; or to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made by or on behalf of [him] at any stage of a criminal prosecution. In the event that [Gonzalez], or [his] counsel on his . . . behalf, advances or offers any argument or factual assertion which is different from any statement made or other information provided during the proffer, the U.S. Attorney's Office may offer and use during Court proceedings, consistent with the Rule of Evidence, the substance of any statement made by [Gonzalez] or information provided by [Gonzalez] during the proffer. . . . This provision includes testimony by [Gonzalez] or arguments, factual assertions or any other representation by [Gonzalez's] counsel, made during opening and closing statements . . . .

**h. No benefit:**

The U.S. Attorney's Office is not offering to confer any benefit upon [Gonzalez] (including the filing of a motion pursuant to U.S.S.G. § 5K1.1, Fed. Crim. 35 and/or 18 U.S.C. § 3553(e)) simply because he . . . has agreed to be interviewed. To date, the U.S. Attorney's Office has made no offer to impart any benefit on [Gonzalez] in exchange for the interview or otherwise.

Paragraph 7: **Full Agreement:**

The U.S. Attorney's Office makes no promises regarding the disposition of this case and no agreements have been entered into except those expressly contained herein. This proffer agreement represents the only agreement between the undersigned parties. No other agreements will be entered into unless in writing and signed by all parties.

(Dkt. No. 103-2 at 1–4).

Gonzalez and his then-counsel, Merino, signed the Agreement. (*Id.* at 4). The following clause appears directly above their signatures:

> By [his] signature, [Gonzalez] acknowledges that [he] has read this agreement in its entirety, or [his attorney has] read and translated it for him . . . and understands the nature and meaning of the agreement and that [Gonzalez] is entering into the agreement voluntarily.

(*Id.*).

After signing the Agreement, Gonzalez gave the Government a statement (the "Proffer Statement" or "Statement"). Although the Statement itself is not in the record, Gonzalez's briefing states that Gonzalez said he knew that there were firearms in his co-defendant's trailer when the two attempted to cross the border into Mexico. (*See* Dkt. No. 103 at 4–5, 10); (Dkt. No. 103-1 at 3).

On August 25, 2023, attorney Nabih Ayad substituted in as counsel. (Dkt. Nos. 34, 35). The Court granted several continuances to allow Ayad to review discovery, confer with Gonzalez, and prepare for trial. (Dkt. Nos. 37, 43, 51, 69, 80, 95). Trial was ultimately set for January 13, 2025. (Dkt. No. 95).

But in December 2024, after reviewing the proffer materials, Ayad moved to suppress both the Proffer Agreement and Gonzalez's Statement. (Dkt. No. 103). He argued that Merino rendered ineffective assistance by advising Gonzalez to "confess" without investigating the case, reviewing discovery, or warning him of the immigration consequences of a conviction. (*Id.* at 1, 6–19). Ayad also contended that the Agreement was unenforceable for lack of consideration, (*id.* at 19–23), and that the Statement was

inadmissible under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, (*id.* at 1, 11 n.1, 23–25).

The Government opposed the Motion, arguing that Gonzalez's ineffective assistance claim was speculative and unripe, the Agreement was enforceable, and Gonzalez had waived the protections of Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence. (Dkt. No. 108). Gonzalez replied. (Dkt. Nos. 109, 110).

The Court stayed trial pending resolution of the Motion. (Dec. 20, 2024, Dkt. Minute Entry). On March 3, 2025, it held a suppression hearing.[2] (Dkt. No. 126); (Mar. 3, 2025, Dkt. Minute Entry). At the close of the hearing, the Court ordered supplemental briefing on several unresolved issues. (*See* Dkt. No. 126 at 60–65); (Mar. 3, 2025, Dkt. Minute Entry). These included whether Gonzalez's ineffective assistance claim was procedurally proper before trial and how he could establish prejudice under *Strickland v. Washington*[3] before a conviction. (*See* Dkt. No. 126 at 24–27, 41–47, 49–56, 59–65).

Gonzalez submitted a post-hearing brief. (Dkt. No. 125). The Government has not. Gonzalez has since moved for a ruling. (Dkt. No. 131).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

"A defendant raising a Sixth Amendment ineffective assistance claim must show that his 'counsel's performance was deficient,' and that 'the deficient performance

[2] No testimony was presented; the Court heard only oral argument. (*See generally* Dkt. No. 126) (suppression hearing transcript).

[3] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

prejudiced the defense.'" *Cruz-Garcia v. Guerrero*, 128 F.4th 665, 674 (5th Cir. 2025) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). "Even if a defendant shows that particular errors of counsel were unreasonable," he must still "show that they actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. Instead, to establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Owens*, 94 F.4th 481, 486 (5th Cir.), *cert. denied*, 145 S.Ct. 218 (2024) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct at 2068).

Gonzalez argues that the Proffer Statement should be suppressed because it was obtained in violation of his Sixth Amendment right to an attorney. To demonstrate this, he must show both that his attorney was ineffective and that, but for this ineffectiveness, his trial would have come out differently. *Cruz-Garcia*, 128 F.4th at 674; *Owens*, 94 F.4th at 486. He argues that this standard is met here because the Statement—that he knew that there were firearms in the trailer—essentially "amounts to a false confession" that will guarantee Gonzalez's conviction. (Dkt. No. 103 at 2, 5, 11, 18). And that but for Merino's shortcomings, Gonzalez would not have made it. (*Id.* at 5); (Dkt. No. 103-1 at 4–5).

As separate lines of attack, Gonzalez argues that the Proffer Agreement and Statement are inadmissible under *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176

L.Ed.2d 284 (2010), (Dkt. No. 103 at 10–14); Federal Rule of Criminal Procedure 11; and Federal Rule of Evidence 410, (*id.* at 2, 11 n.1, 23–24).

The Court considers Gonzalez's arguments under *Strickland* before considering his alternative arguments under *Padilla* and Rules 11(f) and 410.

### A. DEFICIENT PERFORMANCE

As far as the first *Strickland* prong is concerned, Gonzalez makes a number of arguments for why Merino acted ineffectively as his counsel. He argues that Merino encouraged Gonzalez to tell the Government "what they wanted to hear," (Dkt. No. 103 at 10) (quoting Dkt. No. 103-1 at 3), which resulted in Gonzalez falsely stating that he knew the firearms were in the trailer when he really did not, (*id.* at 4–5, 10). Gonzalez claims that this advice was falsely represented as being "in his best interest when [it was] clearly in his *worst* interest." (*Id.* at 10) (emphasis in original); (*see also id.* at 14–19). Moreover, Gonzalez argues that Merino did not inform Gonzalez of his immigration consequences before Gonzalez signed the Proffer Agreement or made the Proffer Statement, and that this "shortcoming alone is *per se* ineffective assistance of counsel." (*Id.* at 12); (*see also id.* at 2, 5).

For purposes of this Order, the Court assumes without deciding that Merino's conduct satisfies the first *Strickland* prong and that, but for his conduct, Gonzalez would not have made the Proffer Statement. It therefore begins and ends its analysis with whether—even granting Gonzalez those assumptions—he could establish prejudice at this point in the proceedings. Because the Court finds he cannot, it need not address

whether Gonzalez could establish that Merino's conduct was deficient or the "but for" cause of Gonzalez's Statement.[4] *See Owens*, 94 F.4th at 486–87.

### B. PREJUDICE

To establish a *Strickland* violation, Gonzalez must demonstrate that Merino's deficient conduct prejudiced his defense. *Cruz-Garcia*, 128 F.4th at 674; *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). "In certain Sixth Amendment contexts, prejudice is presumed." *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. Otherwise, the burden is on the defendant to "affirmatively prove" it. *Id.* at 693, 104 S.Ct. at 2067.

The Court first considers whether it may presume prejudice from Merino's allegedly deficient conduct, in which a trial would be unnecessary to establish it. It then considers—if prejudice is not presumed—whether Gonzalez could establish it at this point in his proceedings.

#### 1. Presumed Prejudice

The Supreme Court and Fifth Circuit have identified specific, narrowly defined circumstances in which "prejudice may be presumed." *Id.* at 692, 104 S.Ct. at 2067. These circumstances include (1) "[a]ctual or constructive denial of the assistance of counsel altogether," *id.*; (2) "state interference with counsel's assistance," *id.*; (3) counsel's complete failure "to subject the prosecution's case to meaningful adversarial testing,"

---

[4] A defendant's "*Strickland* claim fails 'if he cannot establish either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either.'" *Owens*, 94 F.4th at 486 (quoting *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008)). To that end, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland*, 466 U.S. at 670, 104 S.Ct. at 2056.

*United States v. Cronic*, 466 U.S. 648, 659 & n.25, 104 S.Ct. 2039, 2047 & n.25, 80 L.Ed.2d 657 (1984); *United States v. Russell*, 205 F.3d 768, 770–71 (5th Cir. 2000); (4) absence of counsel's assistance "during a critical stage" of proceedings, *id.*; and (5) counsel being "repeatedly unconscious" through the defendant's trial,[5] *Burdine v. Johnson*, 262 F.3d 336, 341 (5th Cir. 2001).

Outside of these scenarios, a defendant must demonstrate how specific attorney errors prejudiced the reliability of the guilty verdict. As the Fifth Circuit has clarified:

> Prejudice is presumed . . . only when the defendant demonstrates that counsel was not merely incompetent but inert, distinguishing shoddy representation from no representation at all. When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed; bad lawyering, regardless of how bad, does not support the *per se* presumption of prejudice.

*Gochicoa v. Johnson*, 238 F.3d 278, 284–85 (5th Cir. 2000) (citation modified).

Gonzalez argues only that Merino was a bad lawyer—not an absent one. He does not allege any of the narrow circumstances that warrant presuming prejudice. Nor has he provided a case suggesting that advice to sign an unfavorable proffer agreement might warrant a presumption of prejudice.

To the contrary, Gonzalez's argument merely claims incompetence or erroneous advice by his attorney—circumstances explicitly distinguished from those constituting

---

[5] Defendants are also entitled to a "more limited[] presumption of prejudice" if they demonstrate that their "counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. In those circumstances, a defendant need only "show that the conflict adversely affected his counsel's performance." *Smith v. Robbins*, 528 U.S. 259, 287, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000). Gonzalez has not made such allegations here.

prejudice *per se*. *See id.* In fact, the few cases this Court has found considering the issue rejected the notion that allegedly ineffective advice prompting a defendant to talk—or even confess—to the government is *per se* prejudicial. *See, e.g.*, *State v. Smith*, 543 N.W.2d 618, 618, 620 (Iowa Ct. App. 1995) (holding that counsel's advice to confess to police regarding murder was a reasonable strategic choice, not *per se* ineffective assistance). Instead, the cases considered how the statements impacted the final verdict, considering how the prosecution used the statements during trial and the weight those statements carried in light of the other evidence introduced. *See United States v. Sumlin*, 567 F.2d 684, 688–89 (6th Cir. 1977) (holding any error in admitting defendant's statement to FBI based on allegedly erroneous advice of counsel was harmless in light of other evidence of guilt introduced at trial), *abrogated on other grounds by Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

Because Merino's conduct does not fall within any recognized category warranting a presumption of prejudice—and in fact seems to fit squarely within the type of case in which prejudice is *not* presumed—the Court finds that Merino's alleged misconduct does not warrant a *per se* finding of prejudice. *See Burdine*, 262 F.3d at 388 (Barksdale, J., dissenting) ("[A] defendant need not prove actual prejudice in order to establish entitlement to presumed-prejudice," but they "must at least prove the existence of the circumstances warranting that presumption.").

**2. <u>Actual Prejudice</u>**

Because the Court will not presume prejudice, Gonzalez must establish actual prejudice by demonstrating "a reasonable probability that, but for [Merino's]

unprofessional errors, the result of the proceeding would have been different." *Owens*, 94 F.4th at 486 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct at 2068). This requires weighing the contested evidence or conduct against "the totality of the evidence" presented at trial. *Baker v. United States*, No. 4:96-CR-00187, 2002 WL 35634847, at *6 (S.D. Tex. Mar. 1, 2002) (first quoting *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069; and then citing *Crockett v. McCotter,* 796 F.2d 787, 793 (5th Cir. 1986) (holding that a court must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial")).

Here, there is a fundamental problem: Gonzalez's trial has not occurred. There is no "reasonable probability" that the outcome of the trial might be different—because there is no "reasonable probability" of any outcome at all. Even if the Court were to accept Gonzalez's premise that conviction is inevitable, (*see* Dkt. No. 125 at 9), it is impossible to assess the Proffer Statement's prejudicial effect without knowing what other evidence will be introduced at trial. Without that context, Gonzalez cannot meet his burden under *Strickland*. *See Salazar-Valencia v. United States*, No. 5:15-CR-01122, 2020 WL 13801433, at *5–6 (S.D. Tex. Dec. 2, 2020) (finding no *Strickland* violation where counsel failed to file motion to suppress statements defendant made to government because defendant "has not shown . . . that there is a reasonable probability that the verdict would have been different absent the excludable statements"), *report and recommendation adopted*, No. 5:15-CR-01122, 2021 WL 11549975 (S.D. Tex. May 3, 2021); *United States v. Lutcher*, No. 2:03-CR-00338, 2009 WL 666767, at *5 (E.D. La. Mar. 10, 2009) ("[S]ince the defendant has not shown a reasonable probability that a suppression

hearing or an objection [to his statements to the government] would have changed the outcome of his case, he has failed to show prejudice under the second *Strickland* prong.").

Gonzalez disagrees. He argues that this case is so exceptional that the ordinary approach to *Strickland* prejudice is unnecessary. (*See* Dkt. No. 110 at 4); (Dkt. No. 126 at 12, 46–47). In his view, the Proffer Statement is sufficiently incriminating that the Court can and should determine prejudice before trial—without waiting to see what other evidence the Government presents. (Dkt. No. 110 at 4). He claims that his Proffer Statement operates as a "false confession," ensuring conviction because it directly admits knowledge of the firearms, a critical element of the charged offenses under 18 U.S.C. §§ 554(a) and 2. (Dkt. No. 103 at 7–11, 18, 25). Gonzalez emphasizes that both statutes require the Government to prove that he "knowingly" attempted to smuggle the firearms across the Mexican border. (*Id.* at 2, 5, 7–11, 18). He contends that an admission of knowledge is certain to be the "but for" cause of conviction. (*See id.* at 2, 5, 11, 13, 18, 25).

And because he claims that he only made the Proffer Statement due to Merino's deficient conduct, Gonzalez asserts that there is a "reasonable probability" that, but for Merino's errors, the result of the proceeding—a presumed conviction—would have been different. *Owens*, 94 F.4th at 486 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct at 2068). Gonzalez urges that the truth is that he did *not* know that there were guns in the vehicle. (Dkt. No. 103 at 3–5, 9–11); (Dkt. No. 103-1 at 2). Thus, if permitted to testify without threat of impeachment by the Proffer Statement, (*see* Dkt. No. 103 at 15) (Dkt. No. 103-2 at 3), he argues that there is a reasonable probability that he will not be convicted, (*see* Dkt. No. 103 at 6, 8–11); (Dkt. No. 125 at 9). He therefore contends that at this point in

the proceedings, he can establish that the Statement is certain to guarantee conviction, and that absent the Statement, there is a "reasonable probability" of acquittal. (Dkt. No. 110 at 4); (Dkt. No. 125 at 9).

While the Court recognizes Gonzalez's position, inculpatory statements to the government are not an exception to the rule: the prejudicial effect of contested evidence must be assessed in light of "the totality of the evidence" presented at trial. Incriminating statements—even those that appear "devastating"—must be evaluated alongside all other trial evidence to determine actual prejudice. *See United States v. McGrew*, 397 F.App'x 87, 94–95 (5th Cir. 2010) (per curiam) [hereinafter *McGrew I*]; *Salazar-Valencia*, 2020 WL 13801433, at *6 ("Though a failure to suppress a defendant's confession, in particular, can be 'damaging,'" a defendant alleging ineffective assistance of counsel must still prove "that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." (first quoting *McGrew I*, 397 F.App'x at 94; and then quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374-75, 106 S.Ct. 2574, 2582-83, 91 L.Ed.2d 305 (1986))).[6]

---

6 For examples of courts weighing inculpatory statements against the totality of the trial evidence to assess *Strickland* prejudice, *see Simon v. Epps*, 344 F.App'x 69, 77–78 (5th Cir. 2009) (per curiam) ("Moreover, regardless of the confession, there was substantial evidence of [the defendant's] guilt"); *Baker v. United States*, No. 4:96-CR-00187, 2002 WL 35634847, at *6 (S.D. Tex. Mar. 1, 2002) (finding erroneous introduction of co-defendant's admission at trial non-prejudicial because even without that testimony, "the evidence against [defendant] was sufficient to support his conviction."), *aff'd*, 801 F.App'x 309 (5th Cir. 2020) (per curiam); *Sumlin*, 567 F.2d at 688–89; *Flowers v. Lumpkin*, No. 2:23-CV-00077, 2024 WL 2194487, at *11 n.2 (N.D. Tex. Apr. 15, 2024) (bolstering no *Strickland*-violation finding because "even if [defendant's] counsel had objected and the confession had been suppressed, the jury had sufficient evidence before it to support a conviction."), *report and recommendation adopted*, No. 2:23-CV-00077, 2024 WL 2187544 (N.D. Tex. May 15, 2024), *certificate of appealability denied*, No. 24-10486, 2024 WL 5652416 (5th Cir. Oct. 10,

(continue)

*McGrew* is instructive. There, a defendant convicted of possessing a rifle as a felon argued that his counsel had violated his Sixth Amendment rights by failing to suppress his statement to police that he "had known about the rifle being under the bed." *United States v. McGrew*, 560 F.App'x 342, 344 (5th Cir. 2014) (per curiam) [hereinafter *McGrew II*]. The "key issue at trial was whether [the defendant] had known about the rifle" and his "primary defense was that, while he had allowed [his co-defendant] to store a number of items in the bedroom, he had not known what they were and had not known about the rifle." *Id.* Because counsel failed to suppress the defendant's admission, the government "was able to testify that [the defendant] explicitly admitted what was essentially the only element of the crime in dispute." *Id.* at 355 (Dennis, J., dissenting).

The Fifth Circuit twice considered whether failure to suppress this statement violated the defendant's Sixth Amendment rights. Each analysis considering the statement's prejudicial impact[7] acknowledged the "inherently damaging nature of a

2024), *cert. denied sub nom. Flowers v. Guerrero*, No. 24-7015, 2025 WL 1727425 (U.S. June 23, 2025); *see also United States v. Matos*, 905 F.2d 30, 32–33 (2d Cir. 1990) (finding ineffective assistance claim plausible in light of counsel's failure to move to suppress inculpatory statements because if "counsel had moved successfully to challenge . . . the admission of the statements, [defendant] might not have been convicted" as "the government would have had no admissible evidence . . . to link [defendant] to the tenants and to the drugs"); *Bludson v. Superintendent*, No. 9:06-CV-00474, 2009 WL 704487, at *7 (N.D.N.Y. Mar. 16, 2009) (holding "unreasonable representation" advising client to "accept[] responsibilit[y]" and implicate himself in crimes in proffer statement to government did not violate Sixth Amendment rights because "there is no reasonable probability that, but for such unreasonable representation, the outcome of the proceeding would have been different").

7 Only the majority in *McGrew I* and the dissent in *McGrew II* evaluated the statement's prejudicial effect. In *McGrew I*, the Fifth Circuit considered counsel's alleged deficiencies and the potential prejudice from the statement, then remanded for an evidentiary hearing on the ineffective assistance claim. 397 F.App'x at 94–95. After the hearing, the court in *McGrew II* affirmed the district court's finding that counsel's conduct was not deficient. 560 F.App'x at 347–

(continue)

defendant's admission." *Id.*; *see McGrew I*, 560 F.App'x at 94 (first citing *United States v. Avants*, 278 F.3d 510, 522 (5th Cir. 2002) (the defendant's confession is "powerful evidence of guilt, the admission or exclusion of which would be highly likely to affect the outcome of the trial"); and then citing *Pyles v. Johnson*, 136 F.3d 986, 996 (5th Cir. 1998) (a confession is "probably the most probative and damaging evidence" against the defendant)). And both recognized the uniquely damaging effect of *that* particular admission. *McGrew II*, 560 F.App'x at 349, 355-56 (Dennis, J., dissenting) (noting that—while violating his *Miranda* rights[8]—the police "questioned [the defendant] for the purpose of procuring an incriminating statement regarding the firearm—that is, a confession from [him] that he knowingly possessed the firearm." "[A] unanimous panel described [the defendant's] statement as having a 'devastating impact' on the case . . . ." (quoting *McGrew I*, 397 F.App'x at 94)).

Nevertheless, both the majority in *McGrew I* and the dissent in *McGrew II* considered the potential prejudice of the statement in light of the rest of the evidence introduced at trial. *McGrew I*, 397 F.App'x at 94 ("Although the government introduced other evidence at trial supporting the inference that [the defendant] had knowledge of the rifle, no evidence was as damaging as [his] admission."); *McGrew II*, 560 F.App'x at 355–56 (Dennis, J., dissenting) ("*A review of the record* indicates that . . . there is a

48. Because the majority found no deficient performance, only the dissent in *McGrew II* addressed prejudice. *Id.* at 347–48, 355–56.

8 *See McGrew II*, 560 F.App'x at 345, 348 (noting that defendant's "statements that he knew about the rifle violated [his] Fifth Amendment rights. However, because [the defendant] did not raise this issue prior to his § 2255 motion," his Fifth Amendment claim was "procedurally defaulted").

reasonable probability that there would have been a different outcome, thus undermining confidence in the conviction." (emphasis added)). Neither suggested that even a "devastating" statement to the government is sufficient, on its own, to establish prejudice before trial or in the absence of a record.

Gonzalez has not provided—and this Court has not found—any authority holding to the contrary. Gonzalez's reliance on out-of-circuit cases like *United States v. Brown*, 623 F.3d 104 (2d Cir. 2010), *United States v. Singh*, 979 F.3d 697 (9th Cir. 2020), and *United States v. Ortiz-Vega*, 860 F.3d 20 (1st Cir. 2017) is misplaced. (*Contra* Dkt. No. 125 at 3–5). Those cases address post-conviction review, reinforcing that prejudice must be assessed after trial and conviction—not before. *See Brown*, 623 F.3d at 113 n.5; *Singh*, 979 F.3d at 708, 730–32; *Ortiz-Vega*, 860 F.3d at 25–26. And the Fifth Circuit case Gonzalez cites, (Dkt. No. 125 at 5), fares no better. Even before it was withdrawn and superseded, it only considered whether a *Strickland* claim may be raised after a defendant pleads guilty. *See United States v. Gardner*, 15 F.4th 382, 384, 387–88 (5th Cir. 2021), *opinion withdrawn and superseded*, No. 20-50481, 2022 WL 422167 (5th Cir. Feb. 11, 2022) (per curiam).

In short, Gonzalez's theory—that prejudice from his Proffer Statement can be determined in the abstract, before trial—finds no support in precedent. Without a trial record or a verdict, the Court cannot conclude that there is a "reasonable possibility" the trial would have been different absent the Statement. *See Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) ("[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong."). And Gonzalez's insistence that his situation is unique

because his "confession" is exceptionally harmful merely repackages his prejudice-*per-se* theory already deemed inapplicable. *See supra* Section II(B)(1).

**3. <u>Proffer as a Plea Deal</u>**

Perhaps recognizing the difficulty of proving prejudice pre-trial, Gonzalez analogizes his Proffer Statement to a guilty plea and argues it should therefore be withdrawn because Merino did not adequately inform Gonzalez of the possible deportation consequences of pleading guilty. (*See* Dkt. No. 103 at 11 n.1, 12–14). In particular, he argues that the Statement should be withdrawn under Rule of Criminal Procedure 11(b)(1)(O)—which requires a court to determine that the defendant understand the immigration consequences of pleading guilty before it accepts his guilty plea—and *Padilla v. Kentucky*, which mandates the withdrawal of a plea when a defendant signs a plea deal and is not sufficiently informed "that pending criminal charges may carry a risk of adverse immigration consequences." 559 U.S. at 369, 130 S.Ct. at 1483; *United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014) ("[I]f the court finds that a *Padilla* violation occurred, that finding compels the court to permit the defendant to withdraw the guilty plea."). Gonzalez argues that a conviction will lead to his deportation, (Dkt. No. 103 at 12), and that he only made the Statement because Merino failed to apprise him of the deportation consequences of doing so, (*id.* at 13–14). Therefore, Gonzalez should be allowed to withdraw the Statement as a *Padilla* violation. (*Id.* at 11–14).

The Court disagrees. Even crediting Gonzalez's assertion that Merino failed to adequately apprise him of the potential immigration consequences of signing the Proffer

Agreement and making the Statement, and assuming "that the failure to advise a noncitizen defendant of the immigration consequences of a criminal conviction is *per se* constitutionally deficient representation," (Dkt. No. 103 at 12) (quoting *Marroquin v. United States*, No. 7:10-CV-00156, 2011 WL 488985, at *4 (S.D. Tex. Feb. 4, 2011), *aff'd*, 480 F.App'x 294 (5th Cir. 2012) (per curiam)), the Court nevertheless finds Gonzalez's argument unpersuasive because it declines to treat Gonzalez's Proffer Agreement or Statement as a guilty plea. While a guilty plea is the undisputed but-for cause of a defendant's conviction, a proffer statement remains merely evidentiary, and its role in a defendant's conviction must be assessed against the other evidence introduced at trial. *See supra* Section II(B)(2). This distinction forecloses Gonzalez's analogy.[9] *See United States v. Hinojosa*, No. 3:16-CR-00536, 2020 WL 905357, at *5 (N.D. Tex. Feb. 25, 2020); *Rankin v. United States*, No. 1:06-CR-00041, 2010 WL 11515345, at *6 (S.D. Miss. Jan. 19, 2010) ("A 'proffer agreement' is not a plea agreement . . . .").

Because the Court declines to construe Gonzalez's Proffer Agreement or Statement as a guilty plea, it finds his arguments predicated on treating them as a guilty plea unpersuasive. Specifically, it disagrees that Merino's failure to inform Gonzalez of the

[9] The Court also disagrees with Gonzalez's assertion that *United States v. Shah* treated proffer agreements and plea agreements as interchangeable. (*See* Dkt. No. 103 at 24) (quoting 95 F.4th 328 (5th Cir. 2024), *cert. denied sub nom. Rimlawi v. United States*, 145 S.Ct. 518, 221 L.Ed.2d 239 (2025)). In *Shah*, when considering the appropriate standard for reviewing the district court's admission of proffer-agreement statements, the Fifth Circuit held that the contested admission of such statements, like the admission of plea negotiations, "would be no different than an objection to any other evidence," and therefore is reviewed for abuse of discretion. 95 F.4th at 369. But concluding that two categories of evidence share the same standard of review is not the same as holding that they must be analyzed identically in all other respects.

deportation consequences of signing the Proffer Agreement renders the Statement inadmissible under *Padilla* or Federal Rule of Criminal Procedure 11(b)(1)(O). (Dkt. No 103 at 11 n.1, 12–14).

* * *

Gonzalez's Sixth Amendment ineffective assistance claim based on his pre-trial proffer statement fails. Gonzalez is not entitled to a presumption of prejudice, nor can he demonstrate it absent a completed trial record. Therefore, all that Gonzalez has and could present before trial is his strongly held belief that a jury will convict him based on his Proffer Statement. This is insufficient. *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) (holding a defendant's self-serving conclusory statement that his testimony would have resulted in an acquittal falls short of satisfying the prejudice prong of *Strickland*). Though Gonzalez may ultimately be correct, the Court must defer holding a *Strickland* hearing until he can support his position with an adequate record. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Accordingly, Gonzalez's request to hold a *Strickland* hearing before trial is denied.

## III. ENFORCEABILITY OF PROFFER AGREEMENT

Gonzalez's final two arguments are that (1) the Proffer Agreement is unenforceable for lack of consideration, (Dkt. No. 103 at 19–23); (Dkt. No. 110 at 6–8); and (2) that his Statement is inadmissible under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence as a statement made during plea negotiations, (Dkt. No. 103 at 23–24). Because a defendant can waive the protections of Rules 11(f) and 410 in a proffer agreement so long as the waiver is knowing and

voluntary, *see United States v. Mezzanatto*, 513 U.S. 196, 210, 115 S.Ct. 797, 806, 130 L.Ed.2d 697 (1995), Gonzalez's second argument is better analyzed as a question of whether Gonzalez entered into the Proffer Agreement knowingly and voluntarily. If so, the Agreement's terms—including its waiver of Gonzalez's rights under Rules 11(f) and 410—are enforceable. If not, Gonzalez's statements are inadmissible under Rules 11(f) and 410, *see Mezzanatto*, 513 U.S. at 210, 115 S.Ct. at 806.

The Court first considers whether the Agreement is unenforceable due to lack of consideration before analyzing whether Gonzalez entered into the Agreement knowingly and voluntarily.

### A. Consideration

Gonzalez argues that the Proffer Agreement is unenforceable because it lacks consideration from the Government. (Dkt. No. 103 at 19–23). Gonzalez points out that the Agreement is not part of a larger bargain, (*id.* at 2, 20) (quoting Dkt. No. 103-2 at 4) (Proffer Agreement ¶ 7), and states that it confers no benefit "simply because [Gonzalez] has agreed to be interviewed," (*id.* at 16) (quoting Dkt. No. 103-2 at 3–4) (Proffer Agreement ¶ 6). In fact, it makes explicit that "[t]o date, the U.S. Attorney's Office has made no offer to impart any benefit on [Gonzalez] in exchange for the interview or otherwise. (*Id.*) (quoting Dkt. No. 103-2 at 4) (Proffer Agreement ¶ 6); (*see id.* at 14, 25).

And he asserts that the Government's alleged consideration—its promise not to use statements made during the proffer session—is illusory for two reasons. First, it constitutes impermissible "past consideration" because the Government already could not use statements that did not exist before the Agreement. (*Id.* at 20); (*see* Dkt. No. 110

at 6–8). Second, the exchange is illusory because the Government is not truly bound by its promise: the Agreement permits the Government, in its sole discretion, to determine whether Gonzalez has made a false or misleading statement and introduce his Proffer Statement. (Dkt. No. 103 at 21–23). Gonzalez concludes that, because the Proffer Agreement fails for lack of consideration, it is not an enforceable contract, and therefore the Agreement and any Proffer Statements should be excluded from trial. (*Id.* at 21); (Dkt. No. 110 at 8).

The Court disagrees. "Nonprosecution agreements [like proffers or pleas deals] are contractual in nature" and are thus governed by "general principles of contract law." *United States v. Appellant 1*, 56 F.4th 385, 390 (5th Cir. 2022) (alteration in original) (quoting *United States v. Cantu*, 185 F.3d 298, 302 (5th Cir. 1999)); *United States v. Ramos*, 537 F.3d 439, 451 (5th Cir. 2008) ("General contract principles guide the interpretation of informal immunity agreements, which are, as here, immunity agreements that are not sanctioned by a court order."). While neither Gonzalez nor the Government cites any cases dealing with consideration in a proffer context,[10] other courts considering the issue have agreed that proffer agreements—like other contracts—must be supported by consideration. *See, e.g.*, *United States v. Hyles*, No. 1:01-CR-00073, 2004 WL 7344344, at *42 (E.D. Mo. Jan. 23, 2004), *report and recommendation adopted*, No. 1:01-CR-00073, 2004 WL 7344343 (E.D. Mo. Sept. 10, 2004). But they have concluded that "a defendant receives something of value

---

[10] *See United States v. Parra*, 302 F.Supp.2d 226, 238 (S.D.N.Y. 2004), *aff'd*, 249 F.App'x 226 (2d Cir. 2007) ("The parties here do not cite to, and the Court has not found any case that has addressed the issue of consideration in a proffer agreement.").

by signing the form proffer agreement," even when the agreement "clarifies that the government, by meeting in a proffer session with defendant, essentially promises nothing in return." *United States v. Parra*, 302 F.Supp.2d 226, 238–39 (S.D.N.Y. 2004), *aff'd*, 249 F.App'x 226 (2d Cir. 2007). "In particular, a defendant receives 'the opportunity to be heard' by the government, an opportunity to which the defendant otherwise has no right." *Id.* at 239 (quoting *United States v. Gomez*, 210 F.Supp. 2d 465, 475 (S.D.N.Y. 2002)); *Bludson v. Superintendent*, No. 9:06-CV-00474, 2009 WL 704487, at *6 (N.D.N.Y. Mar. 16, 2009) (adopting *Parra*). "The Proffer Agreement is the first step towards a potential cooperation agreement, and, without the Agreement, [the defendant] owned no entitlement to that first step." *Parra*, 302 F.Supp.2d at 239 (citation modified). As the Seventh Circuit explained:

> A prosecutor may be reluctant to negotiate; what has the defendant to offer? A statement that shows how the defendant's aid could assist the prosecutor in other cases (or lead to the appropriate sentence in this one) may get negotiations under way and set the stage for a favorable bargain.

*United States v. Krilich*, 159 F.3d 1020, 1024–25 (7th Cir. 1998); *see Mezzanatto*, 513 U.S. at 208, 115 S.Ct. at 805 (noting that absent a proffer agreement, a prosecutor "might never take this potential first step toward a plea bargain").

Even if the only exchange were Gonzalez's Statement and the Government's promise not to use it, the Court would still conclude that the Agreement is supported by adequate consideration. First, Gonzalez's Statement is not "past consideration" because he had not given the Government his Statement before obtaining the Government's

promise not to use it against him, and the Government's promise not to use the Statement against him is what induced him to give it. *See Citibank, Nat. Ass'n v. London*, 526 F.Supp. 793, 803 (S.D. Tex. 1981); *Tim W. Koerner & Assocs., Inc. v. Aspen Labs, Inc.*, 492 F.Supp. 294, 303 (S.D. Tex. 1980) (quoting *Shear Co. v. Harrington*, 266 S.W. 554, 557 (Tex. App.—Waco 1924, no writ)), *aff'd sub nom. Koerner & Assoc. v. Aspen Labs*, 683 F.2d 416 (5th Cir. 1982).

Second, the Court disagrees that the Proffer Agreement does not bind the Government to anything. (*Contra* Dkt. No. 103 at 21–23). "When the government believes that a defendant has breached the terms of a proffer agreement and then wishes to rescind its part of the bargain, the government may not make this determination unilaterally. Instead, the government must prove to the court by a preponderance of the evidence that the defendant materially breached the agreement." *United States v. Tarrant*, 730 F.Supp.30, 32 (N.D. Tex. 1990); *United States v. Adesoye*, 383 F.App'x 421, 423 (5th Cir. 2010) (per curiam); *Cantu*, 185 F.3d at 302. Whether either Party should be released from its contractual obligations is a separate question. For today, it is enough for the Court to conclude that each Party is equally bound by them.

Finally, courts evaluating similar proffer agreements have treated them as enforceable even when the agreement expressly provides that the government makes no promises beyond non-use of the proffer statements. *See United States v. Hoffman*, No. 2:14-CR-00022, 2014 WL 5040721, at *5–6 (E.D. La. Oct. 8, 2014) (assuming proffer agreement enforceable even though it disclaimed that "the government is making no promise of any consideration" for defendant's cooperation and only promised defendant "one

benefit: his proffer statements would not be used against him 'in the government's case-in-chief . . . should a trial be held.'").

The Court concludes that the Proffer Agreement is not unenforceable for lack of consideration.

**B. RULES 11(f) AND 410**

The Court now turns to Gonzalez's argument that his Statement should be excluded under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence. (Dkt. No. 103 at 23–24).

Rule 11(f) provides that "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Rule 410, in turn, bars admission of "any statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea" against the defendant who participated in those discussions. Fed. R. Evid. 410(a)(4). A defendant can, however, waive these protections, so long as the waiver is knowing and voluntary. *See Mezzanatto*, 513 U.S. at 210, 115 S.Ct. at 806.

The Court first considers whether Rules 11(f) and 410 apply to Gonzalez's Statement. If they do, the Court then addresses whether Gonzalez waived their protections by signing the Proffer Agreement.

**1. <u>Application of Rules 11(f) and 410</u>**

Gonzalez contends that his Proffer Statement was made as part of plea negotiations and is therefore inadmissible under Rules 11(f) and 410. (Dkt. No. 103 at 23–24). The Government does not seem to dispute that the Statement would otherwise be

protected, instead arguing that Gonzalez waived these protections by executing the Proffer Agreement. (*See* Dkt. No. 108 at 5–6). The Court agrees with what the Government's position effectively concedes: Absent a valid waiver, Gonzalez's Statement would be excluded under Rules 11(f) and 410.

The Fifth Circuit determines whether a conversation qualifies as "plea discussions" using a two-part test: (1) whether the accused had a subjective expectation to negotiate a plea; and (2) whether that expectation was objectively reasonable under the totality of the circumstances. *United States v. Robertson*, 582 F.2d 1356, 1366–67 (5th Cir. 1978).

Although neither party briefed *Robertson*, the record shows that the proffer session meets its test. First, Gonzalez attests that his original counsel advised him to cooperate and "take responsibility" to obtain a lighter charge or sentence, and that he agreed to proffer to reduce his criminal exposure. (Dkt. No. 103 at 10); (Dkt. No. 103-1 at 3–5). This reflects an expectation to negotiate a plea or, at minimum, to pursue plea-related resolution.

Second, this expectation was reasonable. At the time of the interview, Gonzalez had been charged and arrested and was therefore in a position to enter a plea. *Cf. United States v. Hinojosa*, No. 3:16-CR-00536, 2020 WL 905357, at *6–7 (N.D. Tex. Feb. 25, 2020). The meeting was conducted by an AUSA—an attorney with plea authority, *cf. United States v. Durnin*, 632 F.2d 1297, 1299 n.3 (5th Cir. 1980) (distinguishing statements to officials lacking such authority)—under a formal proffer agreement, *cf. Hinojosa*, 2020 WL 905357, at *8. And as discussed above, *see supra* Section III(A), courts routinely

characterize structured cooperation sessions with prosecutors as "the first step" in plea negotiations. *See Mezzanatto*, 513 U.S. at 208, 115 S.Ct. at 805; *Krilich*, 159 F.3d at 1024–25; *Bludson*, 2009 WL 704487, at *6; *Parra*, 302 F.Supp.2d at 239.

This conclusion is reinforced by the Supreme Court's treatment of statements made during a similar proffer session in *Mezzanatto*. There, the Court considered the defendant's statements to be part of a "plea discussion" when the defendant sought to meet with the prosecutor to explore cooperation and the prosecutor agreed on the conditions that the defendant be completely truthful and that his statements could be used to impeach contradictory trial testimony. *Mezzanatto*, 513 U.S. at 198, 210–11, 115 S.Ct. at 800, 806; *see also United States v. Guerra*, No. 2:17-CR-00137, 2018 WL 8805244, at *2 (N.D. Tex. Sept. 22, 2018) (applying protections of Rules 11(f) and 410 to proffer agreement purporting to waive those protections).

Accordingly, the Court holds that Gonzalez's Proffer Statement was made during "plea discussions with an attorney for the prosecuting authority." Fed. R. Evid. 410(a)(1).

**2. Knowing and Voluntary Waiver**

While generally, this holding would mean that Gonzalez's Statement is inadmissible at trial, a defendant may waive the protections of Rules 11(f) and 410. To be enforceable, such a waiver must be knowing and voluntary.[11] *See Mezzanatto*, 513 U.S. at

[11] Gonzalez does not appear to argue that he signed the Proffer Agreement involuntarily. In any event, the record would not support such a claim. Nothing indicates that his consent to the Agreement's terms was the product of coercion, rather than a normal consequence of his decision to participate in the proffer session—which Gonzalez himself had requested. (Dkt. No. 103-2 at 1); *see Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986); *United States v. Velez*, 354 F.3d 190, 197 (2d Cir. 2004).

210, 115 S.Ct. at 806. A defendant knowingly waives his rights when the defendant has "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (defining term in the context of waiver of *Miranda*[12] rights). The Government bears the burden of establishing waiver. *See Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977).[13]

The Government contends that Gonzalez knowingly waived his rights when he signed the Proffer Agreement. (Dkt. No. 108 at 2, 5–6). It points to a clause expressly waiving Rules 11(f) and 410 protections, (*id.*) (quoting Dkt. No. 103-2 at 2) (Proffer Agreement ¶ 5), and to a certification above the signature line stating that Gonzalez had read—or had his attorney translate—the Agreement and understood its "nature and meaning," (*id.* at 2–3) (quoting Dkt. No. 103-2 at 4).

Gonzalez concedes that he signed the Agreement but contends that he should not be bound by either the waiver clause or by his certification of understanding because he did not comprehend the document. (Dkt. No. 103 at 23–24). He asserts that he does not speak, read, or understand English well; was not provided a Spanish translation, (*id.* at 4); (Dkt. No. 103-1 at 3); and relied on his attorney to explain the Agreement. He claims

---

12 *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

13 *See United States v. Hernandez*, 574 F.2d 1362, 1371 (5th Cir. 1978) ("heavy burden" on government to prove waiver; court should "indulge in every reasonable presumption against waiver"); *United States v. Brown*, 569 F.2d 236, 238 (5th Cir. 1978) (en banc) (government bears burden of proving effective waiver); *Government of Canal Zone v. Gomez*, 566 F.2d 1289, 1292 (5th Cir. 1978) ("cannot be too strongly emphasized that the prosecution still carries a heavy burden to prove a knowing and intelligent waiver"); *United States v. Massey*, 550 F.2d 300, 308 (5th Cir. 1977).

his former attorney, Merino, did not explain the Agreement's terms. (Dkt. No. 103 at 4–5); (Dkt. No. 103-1 at 3–5). He describes himself as a "simple man, ignorant of the law and legal process," (Dkt. No. 103 at 10), and argues that, given his language limitations and ineffective counsel, he signed the Agreement without understanding it. (*See* Dkt. No. 103-1 at 2–5). Responding to the Government, Gonzalez argues that its reliance on the certification as proof of his understanding is circular: if he lacked understanding, the certification cannot prove otherwise. (Dkt. No. 110 at 6).

On this record, the Government has not met its burden to show that Gonzalez knowingly waived his rights. The only evidence it offers is the signed Proffer Agreement. While an express written waiver "is usually strong proof of the validity of that waiver, . . . it is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly . . . waived rights . . . ." *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979); *see United States v. Guerra*, No. 2:17-CR-00137, 2018 WL 8805244, at *2 (N.D. Tex. Sept. 22, 2018). The Court has no testimony from Merino or the AUSA about what was communicated to Gonzalez regarding the waiver. Instead, the record contains only two conflicting statements: Gonzalez's affidavit, which asserts that he received no—or an erroneous—explanation of the Agreement and therefore did not understand it, and the Agreement's certification, which asserts full understanding.

"[C]ourts indulge in every reasonable presumption against waiver." *Brewer*, 430 U.S. at 404, 97 S.Ct. at 1242. Given the minimal and contradictory evidence, the Court cannot find on this record that Gonzalez relinquished his rights with the required "full

awareness" of their nature and the consequences of his decision to abandon them. *See Moran*, 475 U.S. at 421, 106 S.Ct. at 1141. The Proffer Statement is therefore inadmissible under Rules 11(f) and 410 at this time.

The Government may, at a pretrial hearing, attempt to produce controverting evidence on this issue prior to its attempted use at trial.

## IV. CONCLUSION

Considering the foregoing analysis, the Court **GRANTS in part** and **DENIES in part** Defendant Gonzalez's Motion to Exclude Proffer Evidence.

The Court **GRANTS** Gonzalez's request to exclude the Proffer Statement under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410(a)(4) at this time. This ruling is without prejudice. The Government may attempt to establish at a pretrial hearing that Gonzalez knowingly and voluntarily waived the protections of Rules 11(f) and 410.

The Court **DENIES** Gonzalez's request to suppress the Proffer Statement based on alleged ineffective assistance of prior counsel and **DENIES** his request to declare the Proffer Agreement unenforceable for lack of consideration.

It is SO ORDERED.

Signed on March 3, 2026.

Drew B. Tipton

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**